## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Richard Stucki and Travis Tharpe, each individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>Hyundai Motor America, Inc.,<br><br>        Defendant. | Civil Action No.: _____<br><br>**CLASS ACTION COMPLAINT**<br>JURY TRIAL DEMANDED |

Plaintiffs Richard Stucki and Travis Tharpe, on behalf of themselves and all others similarly situated, bring this class action against Hyundai Motor America, Inc., ("Defendant" or "Hyundai") and state and allege as follows:

### INTRODUCTION

1. Hyundai is one of the largest automobile manufacturers in the world. It designs, manufactures, markets, warrants, and sells motor vehicles around the world, including the United States. Among the vehicles Hyundai designs, manufactures, markets, warrants, and sells to consumers is the Hyundai Palisade. Trims on the Hyundai Palisade include SE, SEL, and Limited.

2. The Palisade is Hyundai's three-row SUV in the valuable and competitive three-row SUV market. According to Mike O'Brien, vice president of Product, Corporate and Digital Plaining, indicated that, "[t]he new Hyundai Palisade clearly evokes design imagery worthy of Hyundai's flagship SUV, with new levels of all-road, all-weather capability, technology, safety, roominess and

efficiency, all packaged in cutting-edge design." Further, the "new Hyundai SUV is the ultimate family vehicle for practical, comfortable daily use and memory-making road trips whenever the appeal of the open road should beckon."[1]

3.      SangYup Lee, head of Hyundai's Design Center noted that, "Hyundai Palisade's exterior and interior design clearly reflect its unique flagship identity with a premium, distinctive and bold road presence."[2]

4.      In 2020, the Palisade's MSRP price started at approximately $33,515 for the SE, $39,405 for the SEL, and $48,575 for the Limited Trim. In 2021, the Palisade's MSRPs were comparable.

5.      Hyundai markets and sells its vehicles to consumers by declaring that "[they] strive to build relationships with [their] drivers . . . . that's why [they] design more than great cars—[they] design programs that always put [consumers] first.[3]

6.      Certain trim levels, including the Palisade SEL and Limited trim models (collectively, "Palisade" or the "Vehicle"), which are equipped with leather seats or trim, do not hold up to what Hyundai promises, warrants, and discloses to consumers.

7.      Shortly after purchasing or leasing their Palisade, Plaintiffs and Class Members began smelling a strong foul odor, emanating from inside the vehicle.

---

[1] https://www.hyundainews.com/en-us/models/hyundai-palisade-2020-palisade last visited February 15, 2021).

[2] *Id.*

[3] https://www.hyundaiusa.com/us/en/why-hyundai/happy-drivers (last visited January 28, 2021).

8.     In a word, the Palisade stinks. Some owners cannot drive their vehicles because the smell is so strong it makes them or their passengers nauseous. Other owners, while able to drive the vehicle, have experienced the inconvenience or even embarrassment of driving a brand new car that smells, variously described as rotten seaweed, garbage, garlic, rotten produce, or, in some descriptions, like "****".

9.     Despite knowing and being made aware of the widespread odor issues, Hyundai has failed or refused to provide any permanent solutions to consumers, or remedy the issue by replacing defective components.

10.    For most Americans, the purchase or lease of a motor vehicle is their one of their largest financial investments. If Plaintiffs and Class Members had known about the odor at the time of sale or lease, Plaintiffs and Class Members would not have purchased or leased the Palisades or would have paid significantly less for them.

## THE PARTIES

### Defendant

11.    Defendant Hyundai Motor America ("Hyundai") is a subsidiary of Hyundai Motor headquartered in Fountain Valley, California. Hyundai sells, leases, markets, warrants and oversees regulatory compliance and warranty services for Hyundai cars, trucks, sport utility vehicles, and automobile parts in the United States, through a network of over 800 dealers throughout the United States. Hyundai America is the manufacturer and distributor of new motor

vehicles under the Hyundai brand. Hyundai America manufactures and assembles its vehicles for sale in the United States in an automobile plant located in Montgomery, Alabama. Hyundai also creates and distributes the warranties and other written materials that accompany the sale and lease of Hyundai-branded vehicles throughout the United States, and makes decisions concerning warranty coverage of customer vehicles when problems arise.

12.    Upon information and belief, at all relevant times, Hyundai was engaged in the business of designing, manufacturing, marketing, distributing and selling Hyundai automobiles, including the Hyundai Palisade models in Plaintiffs' home states and throughout the United States.

13.    Hyundai also develops and disseminates the owners' manual, warranty booklets, maintenance schedules, advertisements, and other promotional materials relating to the Hyundai Palisade.  Hyundai is also responsible for the production and content of the information on the window stickers.

14.    Hyundai is the drafter of the warranties provided to consumers nationwide, the terms of which unreasonably favor Hyundai. Consumers are not given a meaningful choice in the terms of the warranties provided by Hyundai, and those warranties are offered on a "take it or leave it" basis.

**Plaintiffs**

15.    Plaintiff **Richard Stucki** ("Stucki") is a citizen of Minnesota and resides in Victoria, Minnesota.

16.     On May 28, 2020 Stucki purchased a brand new Hyundai Palisade Limited AWD from Luther Bloomington Hyundai in Minnesota – an authorized Hyundai dealer.

17.     Stucki purchased his Hyundai Palisade Limited AWD for personal, family, or household use, leasing it through a third-party leasing company, Leas Trans.

18.     Before leasing his vehicle, Stucki spent time researching the Hyundai Palisade Limited AWD online, viewed commercials and advertisements, viewed the vehicle's window sticker, spoke with a salesperson at the dealership regarding the Hyundai Palisade Limited AWD and test drove the vehicle. Stucki believed that the Hyundai Palisade Limited AWD would not only be a safe and reliable vehicle, but at its premium price, would be of a quality associated with comparable luxury lines.

19.     Had Hyundai disclosed its knowledge of the odor defect before he leased his Palisade, Stucki would have seen and been aware of this disclosure. Moreover, had he known of the odor defect, Stucki would not have purchased this vehicle. Hyundai's omissions and concealment were material to Stucki.

20.     After driving the vehicle a few hundred miles, Stucki and his wife began to notice a strong foul odor after the Palisade sat in their garage overnight or when it was parked in a sunny location. It was not the customary "new car smell" which Stucki, a former car dealership service director, knew well.

21.     Approximately six weeks after receiving his vehicle, on or around July 15, 2020, Stucki brought his vehicle to Bloomington Hyundai because of the foul odor. After inspecting the vehicle, the Dealer claimed it could not detect any abnormal odor. However, the Dealer did not attempt to replicate the problem as described, and the problem continued unabated.

22.     On or around July 17, 2020, Plaintiff Stucki contacted Hyundai's Corporate Customer Service Department, reported the problem, and was given a case number (17173273). Stucki was informed by Hyundai's Customer Service Agent that the problem was being investigated, and that they would get back to him.

23.     Stucki did not hear back from Hyundai as promised. On or around August 20, 2020, Stucki, again, contacted Hyundai's Corporate Customer Service Department. He informed Hyundai's representative that the odor was making his wife nauseous when in the vehicle. He was assigned a new case number (17253728) and was assured that the issue would be sent to a national case manager.

24.     Because he again had not heard back as promised, on or around August 24, 2020, Stucki was contacted by a representative from Hyundai who indicated they were unaware of the problem—despite the fact the Palisade odor defect issue had been discussed and widely complained about on the internet.

25.     On or around October 9, 2020, Stucki, again, contacted Hyundai's Corporate Customer Service Department since he never heard back from his

previous contacts.  He was again provided with a new case number (17377627) and told the issue would be escalated to the home office.

26.     Between October 12, 2020 and November 30, 2020, Hyundai was unwilling or unable to provide any solution to Stucki despite being made aware of the odor defect and despite Stucki's numerous attempts to get a solution for the problem.

27.     The Hyundai dealer subsequently treated Stucki's Palisade interior with Febreeze. This did not eliminate the odor; rather it masked it temporarily.

28.     On or around November 30, 2020, Stucki, again, contacted Hyundai's Corporate Customer Service Department and provided the three previous case numbers he was given by Hyundai so that Hyundai's Customer Service Agent on the telephone with him that day could review the case. Again, there was no solution to the problem and Stucki was yet again given a new case number (17509893) and told the problem would be sent to corporate and someone would contact him in three to five days.

29.     Stucki's vehicle has not yet been repaired and continues to be defective.

30.     Stucki has satisfied all pre-suit notice requirements, having filed or made numerous complaints with Hyundai's Consumer Affairs department.

31.     Plaintiff **Travis Tharpe** ("Tharpe") is a citizen of Georgia and resides in Atlanta, Georgia.

32.     Tharpe purchased a brand new Palisade on February 29, 2020, from Potamkin Hyundai Stone Mountain, an authorized Hyundai dealer in Georgia.

33.     Tharpe purchased his Palisade primarily for personal, family, or household use.

34.     Prior to purchasing his Palisade, Tharpe spent time researching the vehicle, viewed the vehicle's window sticker, spoke with a sales person at the dealership regarding the Palisade and test drove the vehicle. Tharpe believed that the Palisade would be a safe and reliable vehicle.

35.     Had Hyundai disclosed its knowledge of the odor defect before he purchased his Palisade, Tharpe would have seen and been aware of this disclosure. Moreover, had he known of the odor defect, Tharpe would not have purchased this vehicle. Hyundai's omissions and concealment were material to Tharpe.

36.     Shortly after taking possession of his Palisade, Tharpe smelled a foul odor emanating from inside the vehicle.

37.     Tharpe contacted Hyundai's Corporate Customer Service Department, reported the problem, and was given a case number (17228046).

38.     To-date, a representative from Hyundai's Corporate Customer Service Department is yet to contact Tharpe about the problem.

39.     On August 26, 2020, Tharpe presented his Palisade to Hyundai of Atlanta in an attempt to have the defect fixed.

40.     After confirming the issue, Hyundai of Atlanta informed Tharpe that there was no fix for the defect.

41.    Tharpe's vehicle has not been repaired and continues to be defective.

42.    Tharpe has satisfied all pre-suit notice requirements, having made a claim with Hyundai's Consumer Affairs Department and having sent a pre-suit notice letter to Hyundai's Legal Department.

## JURISDICTION AND VENUE

43.    This Court has subject matter jurisdiction over this controversy pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because: (a) the proposed Class, defined below, consists of more than one hundred members; (b) the parties are minimally diverse, as members of the proposed Class are citizens of states different than Defendant's home state; and (c) the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs.

44.    This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

45.    This Court has personal jurisdiction over Defendant because it has conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within Minnesota and throughout the United States.

46.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Defendant marketed, advertised, and sold the affected vehicles, and conducted extensive business, within this District.

## FACT ALLEGATIONS

47.    Hyundai holds itself out to as putting consumers first stating that "everyone deserves better.  From the way [they] design and build [their] cars to the way [they] treat the people who drive them, making things better is at the heart of everything [they] do."[4]   Their promise is "to create a better experience for customers."[5]

48.    Through dealerships and sales locations throughout the United States, Hyundai sold "45,690 retail units in November [2020], with SUVs representing 68% of the total retail mix."[6] Palisade sales were up by 20% when compared to sales from November 2019.[7]

49.    As of November 2020, year-to-date sales for all Hyundai automobile were 555,991 with the Palisade accounting for 74,538 of the sales.[8]

50.    Hyundai advertises that its vehicles, including the Palisade, are backed by "America's best warranty."[9]

## A.    The Odor Defect in the Hyundai Palisade

51.    The Palisade, when operated as expected, emanates a foul odor so strong Plaintiffs and Class Members are unable to use or enjoy their vehicles.

---

[4] https://www.hyundainews.com/en-us/releases/3210 (last visited January 28, 2021).
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] https://www.hyundaiusa.com/us/en/assurance/america-best-warranty (last visited January 28, 2021).

52.     This defect renders the Palisade unfit their ordinary and intended use, depriving Plaintiffs of their purchase or lease.

**B.     Hyundai's Knowledge of the Odor Defect**

53.     Hyundai knows, or should have known, of the odor from its pre-sale testing and design.  The foul odor emanating from the interior of the Hyundai Palisade causes the vehicle to fail in performing its essential function because Plaintiffs, Class Members, and consumers are not able to drive or ride in the vehicle without significant annoyance, discomfort, and in some cases, nausea.

54.     If Hyundai's pre-sale testing and design process did not put Hyundai on notice of the odor defect, then articles written regarding the odor and the high number of consumer complaints did.

55.     Cars.com conducted a three-part investigation titled "*CSI: Car Smell Investigation.*"  "To those of us who have gotten the more severe attack on our nostrils (and it hasn't been everyone), it's a sharp chemical odor with a dash of something organic like garlic or rotten produce, and it started at the arrival of 90-degree days in the Chicago area, where Cars.com is headquartered."[10]  The article outlined how a service director at a local Hyundai service department reacted when he smelled the seats in the vehicle indicating that "perhaps regretting the big whiff,

---

[10]https://www.cars.com/articles/csi-car-smell-investigation-2020-hyundai-palisade-edition-425864/ (last visited February 12, 2021)

because his nose crinkled and face cringed while exclaiming how bad, "Really bad," it smelled."[11]

56.     The article went on to note different factors contributing to the level or intensity of order in the vehicle. Specifically noting "[h]ow long the car sits, where it sits, and variables like sun and heat exposure all seem to factor in, as does each individual occupant's sense of smell. At the worst I experienced, our Palisade was sitting outside in 90-degree weather for more than a day with the windows up. Even in cooler weather, prolonged time sitting and sun exposure seem to exacerbate the problem."[12]

57.     Car and Driver, an automobile magazine and trade publication published an article on August 26, 2020, "*Some 2020 Hyundai Palisade Owners Are Complaining of Bad Odors*." "The aroma coming off some new Palisades isn't that new-car smell—instead, try old worn socks, according to one Hyundai technician."[13] The article noted that, "[f]or months, owners of the new Palisade have taken to the online Palisade Forum to share discussions with other owners about their experience with a smell coming off their SUV."[14]

58.     Further, according to the article, "Some described it as "really bad breath," a "garlicky smell," "hot garbage," a "weird greasy electrical odor of sorts,"

---

[11] *Id.*

[12] *Id.*

[13] Some 2020 Hyundai Palisade Owners Are Complaining of Bad Odors (caranddriver.com) (last visited February 12, 2021)

[14] *Id.*

and one Hyundai technician reportedly said it smells "like old worn socks." "Some are blaming the headrests while others think it's the seating all together; nonetheless, there doesn't seem to be a silver bullet solution to getting rid of the scent."[15]

59.     The article ended by noting that "[a] Hyundai spokesperson told *Car and Driver*, 'Hyundai Motor America is aware of the concern and is currently investigating the situation,' suggesting that there currently isn't a solution." [16]

60.     Hundreds of complaints online, including Palisade forum with consumer complaints, describe in their experiences in details on palisadeforum.com website:[17]

> Customer identified as "Bru"
> Hi, all. We have a Palisade Limited with light interior and curious smell, and this popped in Google up as one of the larger discussions. It's a pungent odor, very sharp, foul and chemical-like. It's most definitely not a typical "new car smell". Our car primarily sits outside. And the Chicago area's recent 98-percent humidity, 90-degree days, it's been particularly bad. Does anyone else who's experiencing this smell live in hot, humid areas? I think it's getting worse, too, as the temps climb and the car sits outside.
>
> I went through the same sniff test diagnosis, and my nose seems to think it's coming from inside the seats, rather than the upholstery coverings. With the head restraints out and my nose up to the mounting hole, it seems to emanate from inside the seat in the first and second row, and with the third row head restraints folded, from the slots where the mounts go into the seats. Does anyone else get that sense, too?

---

[15] *Id.*

[16] *Id.*

[17] https://www.palisadeforum.com/threads/unpleasant-interior-odor.981/ (last visited January 27, 2021).

Edit: We've had our car since December and now has 7,500 miles on it.

Customer identified as "Mightyquinn"
I removed all the headrests last night and checked it again this morning and there was still a smell in the cabin. At this point I am going to buy one of those odor exterminators and hope for the best. I would rather the car smell like a pool than garlic and onion.

Customer identified as "Sue010299"
I have the limited, black interior and it STINKS! It's gym socks meets body odor. I bought it in Jan. I paid to have it detailed and the guy couldn't believe it. He has tried multiple things with no luck. It goes away quickly, but it's awful when you open the door. I've tried all types of stuff with no luck.

Customer identified as "Dean Piccoli"
I just joined this forum and invite anyone struggling with this unusual issue to read the posts from another Palisade user group here: Hyundai Palisade Owners Family

My Palisade (Limited FWD) looks good, smells bad. I've had it 8 months and tried every odor remedy I could think of including ozone generator blasts, until I dug deep to find the primary source as the headrest foam. My own journey is detailed in that other forum.

Thanks for having me. I'll be reading all of your posts to catch up with anything I've missed.

Customer identified as "Attaboy"
They did the same thing to me. Nobody could smell it but me. I finally asked them to have the front office girl give it a smell and she confirmed the odor. Then I took the service writer out to the lot and had him grab keys to the a few lower trims and a limited like mine. We opened up each of the vehicles and it became evident that the limiteds have a problem. That was the only way I got them to admit there was an issue. I have new set of headrests on the way apparently so let's see. I don't expect they'll smell any different sadly. It took some district or regional person to sign off.

<u>Customer identified as "Klink22"</u>
Have same smell issue - Limited w/Beige. Have had for a month now and smell started about a week after. Just found this thread today and going to try suggestions and then report to Hyundai if no progress.

<u>Customer identified as "SWindsor"</u>
Update as Jul 2020: my car is a limited and beige interior. I took it to the dealership and left it overnight with them. The next morning I was at the door at opening time for the service manager and I could open it together. The odor was so rancid that he even said that's horrible. He said there wasn't anything the company can do about it because there wasn't a "technical bulletin" put out on what to do. Until this entire community complains loudly to the General home office, I am sure they are going to ignore it. He also said they haven't had anyone complain about this at their edmond dealership. I think they need to change their seat material. Now I will write the corporate office with a trouble ticket.

<u>Customer identified as "Rod S"</u>
My wife and I purchased the Palisade last Fall with the white interior and the smell (garlic like) was so overwhelming we took it back. They tried for two days to air out the vehicle and clean the interior with no success. They took the car back and we took another identical Palisade that just arrived from the factory. It too had the same smell. We have to leave the windows down while parked in our garage or the smell knocks you over as the you open the door. They have tried to clean it as well but now 7 months later it still stinks. The service department there now claims we are the ONLY people complaining of a smell.

<u>Customer identified as "Chall3414"</u>
I bought one last August an am having the same problem. I can't believe this. We have had 6 bombs in this $50,000 car. Mine smells like extreme bad breath. We have detailed it to death. It is ridiculous that nothing can be done because I love the car.

<u>Customer identified as "Aharp"[18]</u>

Sadly, after getting all 7 headrest replaced, the odor is NOT GONE. I simply just deal with it at this time. After 2 failed treatments and headrest replacement, I thing the odor is coming from other parts of the seats. I just keep the windows down in the garage to keep the

---

[18] https://www.palisadeforum.com/threads/unpleasant-interior-odor.981/page-30 (last visited April 17, 2021).

vehicle aired out so I do not smell it. Make no mistakes, the odor is still there if the vehicle is closed tight over night. Overall, I love the vehicle. I can not say I would recommend buying it knowing this problem! I would choose a different vehicle.

61.     The consumer experiences above are by no means isolated or outlying occurrences. There are hundreds of these complaints. The examples show that the consumers complained to their local dealerships and to the corporate offices of Hyundai.

62.     In addition, both Plaintiffs provided Hyundai's consumer affairs department with the requisite notice of their claims.

63.     Upon information and belief, Hyundai, through: (1) published articles on automobile trade publications, (2) customer complaint records, (3) dealership repair (or attempted repair) records, (4) warranty and post-warranty claims, (5) internal testing, and (6) various other sources, was well aware of the odor but failed to notify consumers including Plaintiff and Class Members of the nature and extent of the problem with the odor in the Palisade or provide any adequate remedy.

64.     Hyundai has also not issued a recall or buyback program, despite the known defect.

65.     Upon information and belief, Hyundai's Customer Service or Relations Departments has received numerous complaints from customers, therefore, making Hyundai sufficiently aware of the problem. Furthermore, upon information and belief, Hyundai had knowledge of the defect, directly and indirectly from its authorized dealers.

66.     In October 2020, Hyundai issued a Technical Service Bulletin (TSB# 20-BD-018H). Hyundai reported that it believed the odor emanated from the imitation leather coverings of the head restraints in certain Palisade trim levels. The TSB attempted to remedy the defect using basic household cleaning materials, such as Febreze. This did not fix the defect.

67.     In certain instances, some consumers were able to receive replacement headrests. Upon information and belief, and as reported on internet chat rooms, replacement headrests did not fix the defect. Dealers who took delivery of replacement headrests reported to their customers that the headrests also still stank. Upon information and belief, dealers who have received replacement headrests to put in vehicles have had to return many of them to Hyundai, because they still have the same foul odor.

68.     Some consumers have been able to return their cars to Hyundai pursuant to state lemon laws. These vehicles, if resold, must be resold with a lemon law disclosure, thus affecting the valuation of Plaintiffs and class member Vehicles.

69.     Hyundai is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, Hyundai likely conducts testing on its vehicles before bringing them to market to verify that they are free from defects— this includes the Palisade—and comply with the standard Hyundai has set for itself. Consequently, Hyundai knew, or should have known, that the Palisades had the odor defect and would cost Plaintiffs and Class Members money beyond what they paid for their vehicles originally.

### C.    Hyundai's Concealment

70.    Hyundai had a duty to disclose the above-described defect to Plaintiffs and Class Members, but failed to do so.

71.    Hyundai sold or leased the Palisade to Plaintiffs and Class Members and made warranties and express representations with knowledge of the defect in the Palisade.

72.    The defect in the Palisade was not disclosed to Plaintiffs or other Class Members at the point of sale when they bought or leased their vehicles, nor has Hyundai disclosed the defect to Class Members since purchase.

73.    Accordingly, Hyundai's ill-gotten gains, benefits, and profits resulting from the material concealment and omission, that did and likely will continue to deceive consumers, should be disgorged.

### TOLLING OF STATUTES OF LIMITATIONS AND ESTOPPEL

74.    Any applicable statute(s) of limitations have been tolled by Hyundai's knowing and active concealment, misrepresentations and omissions of the defect in the Palisade. Plaintiffs and Class Members could not have reasonably discovered the true nature of the defect until after they experienced the odor, shortly after purchasing their vehicle and learned that the problem was not isolated to their individual vehicle.

75.    At all times, Hyundai is and was under a continuous duty to disclose to Plaintiffs and Class Members the true standard, quality and grade of the Palisade

and to disclose the defect due their its exclusive and superior knowledge of the existence and extent of the defect.

76.    Accordingly, all applicable statutes of limitation have been tolled based on the discovery rule and Hyundai's fraudulent concealment, and Hyundai is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

77.    Plaintiffs bring this action as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and Class Members nationwide similarly situated. Plaintiffs seek to represent a class of:

> All persons who purchased or leased a Hyundai Palisade beginning with model year 2020, primarily for personal use, and not for resale.

78.    The following persons are excluded the above Class definitions: (1) any Judge or Magistrate presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

79.    Collectively, unless otherwise so stated, the above-defined class, including named Plaintiffs, are referred to herein as the "Class."

80.    Plaintiffs reserve their right to amend the Class definition if discovery or further investigation reveals that any Class should be expanded or narrowed, or modified in any other way.

**Numerosity**

81.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical.   There are hundreds of thousands of proposed class members. As of November 2020, Hyundai had sold approximately 74,538 Palisades, including tens of thousands of Palisades in the affected trim levels.

**Commonality**

82.    There are questions of law and fact common to the proposed Class. Common questions of law and fact include without limitation:

    i.    Whether the Palisade possess a material defect;

    ii.    Whether Hyundai was aware of the defect and, if yes, how long Hyundai has known about it;

    iii.    Whether Hyundai concealed the defect from Class members;

    iv.    Whether Hyundai knew, or should have known, that the Palisades it sold into the stream of commerce pose unreasonable risk to consumers;

    v.    Whether the defect constitutes material facts that reasonable purchases would have considered in deciding whether to purchase a Palisade;

vi.    Whether Hyundai had a duty to disclose the nature of the defect to Class Members;

vii.    Whether Hyundai engaged in unfair, unlawful or fraudulent business practices by failing to disclose the defect.

viii.    Whether Hyundai breached its express warranty obligations;

ix.    Whether Hyundai was unjustly enriched by the sale of the Palisades to Class Members;

x.    Whether Class Members are entitled to recover damages.

**Typicality**

83.    Plaintiffs' claims are typical of the proposed Class.  Like the proposed Class, Defendant's conduct towards Plaintiffs have caused damages and harm, as a proximate or legal result of the common course of conduct of Defendant, as articulated in the class action complaint. Plaintiffs and all members of the proposed Class purchased or leased a new Hyundai Palisades with the same defect—the foul odor emanating from the interior of the vehicle—giving rise to the same claims.  Plaintiffs allege the same breach, and other claims, as the proposed Class. Plaintiffs seek the same type of relief in the class action and have no interests that conflicts with the interest of the proposed Class.

**Adequacy**

84.    Plaintiffs will fairly and adequately protect the interest of the proposed class. Plaintiffs are represented by experienced class counsel who are

experienced in complex commercial litigation and class actions and are prepared to vigorously litigate this case through judgement and appeal, if necessary.

**Predominance and Superiority**

85.     Common questions of law and fact predominate over any questions affecting only individual members of the proposed class.  These common legal and factual questions arise from central issues which do not vary from Class Member to Member, and which may be determined without reference to individual circumstance of any particular Class Member.

86.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of hundreds of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.  Further, because of the damages suffered by any individual Class Member may be relatively modest in relation to the cost of litigation, the expense and burden of individual litigation make it difficult, if not impossible, for Class Members to seek redress individually for Defendant's wrongful conduct as alleged. Furthermore, many of the Class Members may be unaware that claims exist against Defendant.

87.     The proposed Class is readily ascertainable.  Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. The name and potentially address of Class Members are available from Defendant's in their sales records.

## CAUSES OF ACTION

### Count I
### Breach of Express Warranty
### Minn. Stat. §§ 336.2-313 and 336.2A-210
### (On Behalf of the Minnesota Class)

88.     Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

89.     Hyundai is and was at all relevant times a "merchant" with respect to motor vehicles under Minn. Stat. §§ 336.2-104(1) and 336.2A-103(3).

90.     Hyundai is and was at all relevant times a "seller" of motor vehicles under Minn. Stat. § 336.2-103(1)(d).

91.     With respect to leases, Hyundai is and was at all relevant times a "lessor" of motor vehicles under Minn. Stat. § 336.2A-103(1)(p).

92.     All Minnesota Class Members who purchased a Palisade in Minnesota are "buyers" within the meaning of Minn. Stat. § 336.2-103(1)(a).

93.     All Minnesota Class Members who leased a Palisade in Minnesota are "buyers" within the meaning of Minn. Stat. § 336.2A-103(1)(n).

94.     In connection with the purchase or lease of a  Palisade, Hyundai provided the Minnesota Plaintiff and Minnesota Class Members with written express warranties warranting the  Palisade was fee from defect, and would repair or replace "any component originally manufactured or installed" by Hyundai.

95.     These warranties formed the basis of the bargain that was reached when the Minnesota Plaintiff and Minnesota Class Members unknowingly purchased or leased the defective  Palisade.

23

96.    Hyundai knew or should have known that the warranties were false or misleading at the time it sold or leased the  Palisade to the Minnesota Plaintiff and Minnesota Class Members.

97.    The Minnesota Plaintiff and Minnesota Class Members reasonably relied on Hyundai's express warranties when purchasing or leasing their  Palisade.

98.    Hyundai knowingly breached its express warranties to the Minnesota Plaintiff and Minnesota Class Members by failing to remedy any defect in material or workmanship in the Palisade after becoming aware of the defect.

99.    Furthermore, Hyundai breached its express warranties by providing a product containing defects that were never disclosed to the Minnesota Plaintiff and Minnesota Class Members.

100.    The Minnesota Class has provided Hyundai reasonable notice and opportunity to cure its breach of the implied warranties by way of complaints online, complaints to Hyundai authorized dealers, and calls to Hyundai's Customer Relations Department, but Hyundai has failed or refused to remedy the defect.

101.    As a direct and proximate result of Hyundai's breach of its express warranty, the Minnesota Plaintiff and Minnesota Class Members have suffered damages.

**Count II**
**Breach of Implied Warranty of Merchantability**
**Minn. Stat. §§ 336.2-314 and 336.2A-212**
**(On Behalf of the Minnesota Class)**

102.    Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

103.    A warranty that the Palisade were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Minn. Stat. §§ 336.2-314 and 336.2A-212.

104.    The Palisade did not comply with the implied warranty of merchantability because, at the time of sale or leased and at all times thereafter they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used.  Specifically, the Palisade emanates such a strong, foul and unpleasant odor that the Minnesota Plaintiff and Minnesota Class Members could not drive or ride in their vehicles.

105.    Hyundai is and was at all relevant times a "merchant" with respect to motor vehicles under Minn. Stat. §§ 336.2-104(1) and 336.2A-103(3).

106.    Hyundai is and was at all relevant times a "seller" of motor vehicles under Minn. Stat. § 336.2-103(1)(d).

107.    With respect to leases, Hyundai is and was at all relevant times a "lessor" of motor vehicles under Minn. Stat. § 336.2A-103(1)(p).

108.    All Minnesota Class Members who purchased a Palisade in Minnesota are "buyers" within the meaning of Minn. Stat. § 336.2-103(1)(a).

109.   All Minnesota Class Members who leased a Palisade in Minnesota are "buyers" within the meaning of Minn. Stat. § 336.2A-103(1)(n).

110.   The Palisades are and were at all relevant times "goods" within the meaning of Minn. Stat. §§ 336.2-105(1) and 336.2A-103(1)(h).

111.   The Minnesota Plaintiff and Minnesota Class Members have provided Hyundai reasonable notice and opportunity to cure its breach of the implied warranties by way of complaints online, complaints to Hyundai authorized dealers, and calls to Hyundai's Customer Relations Department, but Hyundai has failed or refused to remedy the defect.

112.   As a direct and proximate result of Hyundai's breach of its implied warranty of merchantability, the Minnesota Plaintiff and Minnesota Class Members have suffered damages.

### Count III
### Violation of Minnesota Consumer Fraud Act,
### Minn. Stat. §§ 325F.68, *et seq.* and Minn. Stat. §§ 8.31, *et seq.*
### (On Behalf of the Minnesota Class)

113.   Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

114.   Hyundai, the Minnesota Plaintiff, and the Minnesota Class Members are "persons" as defined by Minn. Stat. § 325F.68(3).

115.   The Palisades are "merchandise" as defined by Minn. Stat. § 325F.68(2).

116.   Hyundai engaged in "sales" as defined by Minn. Stat. § 325F.68(4).

117.    Hyundai engaged in false promises, misrepresentations, misleading statements, or deceptive practices in connection with the sale of merchandise, in violation of Minn. Stat. § 325F.69(1), as described herein.

118.    Hyundai, through their agents, employees, or subsidiaries, violated the Minnesota Consumer Fraud Act ("Minnesota CFA") by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts regarding the odor in the Palisades.

119.    Hyundai intended to induce the Minnesota Plaintiff and Minnesota Class Members to rely on their misrepresentations and omissions in purchasing or leasing their vehicles and by failing to disclose the odor consumers will experience after purchasing or leasing the Palisades, Hyundai engaged in one or more of the unfair or deceptive business practices prohibited by Minn. Stat. § 325F.69, including the use, or employment by any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise.

120.    Hyundai's unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Minnesota Plaintiff and Minnesota Class Members, about the true nature of the Palisades, the quality of the vehicle and its true value.

121.   Hyundai's concealment of the defect in the Palisades were material to the Minnesota Plaintiff and Minnesota Class Members.   Had the Minnesota Plaintiff and Minnesota Class Members known the truth and true value of the Palisades, they would not have purchased or leased them, or in the alternative, they would have paid significantly less for them.

122.   The Minnesota Plaintiff and Minnesota Class Members had no way of discerning that Hyundai's representations were false and misleading and did not and could not have unravel Hyundai's deception on their own.

123.   Hyundai had an ongoing duty to consumers, the Minnesota Plaintiff and Minnesota Class Members, not only, to refrain from their unfair or deceptive practices under the Minnesota CFA, they also had a duty to disclose all material facts concerning the Palisades because they possessed exclusive knowledge of the defect.

124.   As a direct and proximate result of Hyundai's deceptive acts and practices, the Minnesota Plaintiff and Minnesota Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing or leasing their vehicles.

125.   Hyundai's violations has an effect, not only on the Minnesota Plaintiff and Minnesota Class Members, but on consumers and the general public.

126.   Hyundai's unlawful acts and practices described herein affect the public interest.

127.   Pursuant to Minn. Stat. § 8.31, subd. 3a, the Minnesota Plaintiff and Minnesota Class Members are entitled to seek and receive damages they sustained as a result of Hyundai's violations of the Minnesota CFA and any other just and proper relief available thereunder.

**Count IV**
**Violation of Minnesota Uniform Deceptive Trade Practices Act,**
**Minn. Stat. §§ 325D.43 *et seq***
**(On Behalf of the Minnesota Class)**

128.   Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

129.   The Minnesota Deceptive Trade Practices Act ("Minnesota UDTPA") prohibits deceptive trade practices in the course of a business, vocation, or occupation. Minn. Stat. § 325D.44, subd. 1.

130.   In the course of their business, Hyundai, through their agents, employees, or subsidiaries, violated the Minnesota UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts regarding the defect in the Palisade.

131.   Specifically, engaging in deceptive trade practices in the course of its business and vocation, directly or indirectly affecting the people of Minnesota, including the Minnesota Plaintiff and Minnesota Class Members, Hyundai, violated Minn. Stat. § 325D.44, including the following provisions: representing that their goods and services had characteristics, uses, and benefits that they did not have, in violation of Minn. Stat. § 325D.44(1)(5); representing that goods and services are of a particular standard or quality when they are of another, in

violation of Minn. Stat. § 325D.44(1)(7); advertises goods or services with intent not to sell them as advertised, in violation of Minn. Stat. § 325D.44(1)(9); and engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding, in violation of Minn. Stat. § 325D.44(1)(13).

132.   Hyundai's representations and omissions were material because they were likely to deceive reasonable consumers, the Minnesota Plaintiff and Minnesota Class Members.

133.   Hyundai intended to induce the Minnesota Plaintiff and Minnesota Class Members to rely on their misrepresentations and omissions.

134.   The Minnesota Plaintiff and Minnesota Class Members had no way of discerning that Hyundai's representations were false and misleading and did not and could not have unravel Hyundai's deception on their own.

135.   Hyundai had an ongoing duty to consumers, the Minnesota Plaintiff and Minnesota Class Members, not only, to refrain from their unfair or deceptive practices under the Minnesota UDTPA, they also had a duty to disclose all material facts concerning the Palisades because they possessed exclusive knowledge of the defect.

136.   As a direct and proximate result of Hyundai's deceptive acts and practices, the Minnesota Plaintiff and Minnesota Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing or leasing their vehicles.

137.   Hyundai's violations has an effect, not only on the Minnesota Plaintiff and Minnesota Class Members, but on consumers and the general public.

138.   Hyundai's unlawful acts and practices described herein affect the public interest.

139.   Pursuant to Minn. Stat. § 8.31, subd. 3a, the Minnesota Plaintiff and Minnesota Class Members are entitled to seek and receive damages they sustained as a result of Hyundai's violations of the Minnesota UDTPA and any other just and proper relief available thereunder.

**Count V**
**Breach of Express Warranty**
**O.C.G.A. §§ 11-2-313 and 11-2A-210**
**(On Behalf of the Georgia Class)**

140.   Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein

141.   Hyundai is and was at all relevant times a "merchant" with respect to motor vehicles under O.C.G.A. §§ 11-2-104(1) and 11-2A-103(3).

142.   Hyundai is and was at all relevant times a "seller" of motor vehicles under O.C.G.A. § 11-2-103(1)(d).

143.   With respect to leases, Hyundai is and was at all relevant times a "lessor" of motor vehicles under O.C.G.A. § 11-2A-103(1)(p).

144.   All Georgia Class Members who purchased a Palisade in Georgia are "buyers" within the meaning of O.C.G.A. § 11-2-103(1)(a).

145.   All Georgia Class Members who leased a Palisade in Georgia are "buyers" within the meaning of O.C.G.A. § 11-2A-103(1)(a).

31

146.   In connection with the purchase or lease of a Palisade, Hyundai provided the Georgia Plaintiff and Georgia Class Members with written express warranties warranting the Palisade was fee from defect, and would repair or replace "any component originally manufactured or installed" by Hyundai.

147.   These warranties formed the basis of the bargain that was reached when the Georgia Plaintiff and Georgia Class Members unknowingly purchased or leased the defective Palisade.

148.   Pursuant to O.C.G.A. § 11-2-313(a), Hyundai had an obligation to conform the Palisade to the express warranties.

149.   Hyundai knew or should have known that the warranties were false or misleading at the time it sold or leased the Palisade to the Georgia Plaintiff and Georgia Class Members.

150.   The Georgia Plaintiff and Georgia Class Members reasonably relied on Hyundai's express warranties when purchasing or leasing their Palisade.

151.   Hyundai knowingly breached its express warranties to the Georgia Plaintiff and Georgia Class Members by failing to remedy any defect in material or workmanship in the Palisade after becoming aware of the defect.

152.   Furthermore, Hyundai breached its express warranties by providing a product containing defects that were never disclosed to the Georgia Plaintiff and Georgia Class Members.

153.   The Georgia Class has provided Hyundai reasonable notice and opportunity to cure its breach of the express warranties by way of complaints

32

online, complaints to Hyundai authorized dealers, and calls to Hyundai's Customer Relations Department, but Hyundai has failed or refused to remedy the defect.

154.   As a direct and proximate result of Hyundai's breach of its express warranty, the Georgia Plaintiff and Georgia Class Members have suffered damages.

**Count VI**
**Breach of Implied Warranty of Merchantability**
**O.C.G.A. §§ 11-2-314 and 11-2A-212**
**(On Behalf of the Georgia Class)**

155.   Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

156.   Pursuant to O.C.G. A. §§ 11-2-314 and 11-2A-212, a warranty that the Palisade were in merchantable condition was implied by law in the sale or lease of the vehicles. Hyundai impliedly warranted that the Palisades were of a merchantable quality

157.   The Palisade did not comply with the implied warranty of merchantability because, at the time of sale or leased and at all times thereafter they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Palisade emanates such a strong, foul and unpleasant odor that the Georgia Plaintiff and Georgia Class Members could not drive or ride in their vehicles.

158.   Hyundai is and was at all relevant times a "merchant" with respect to motor vehicles under O.C.G. A. §§ 11-2-104 and 11-2A-103(3).

159.    Hyundai is and was at all relevant times a "seller" of motor vehicles under O.C.G. A. §§ 11-2-103(1)(d).

160.    The Palisades are and were at all relevant times "goods" within the meaning of O.C.G. A. §§ 11-2-105(1) and 11-2A-103(1)(h).

161.    The Georgia Plaintiff and Georgia Class Members have provided Hyundai reasonable notice and opportunity to cure its breach of the implied warranties by way of complaints online, complaints to Hyundai authorized dealers, and calls to Hyundai's Customer Relations Department, but Hyundai has failed or refused to remedy the defect.

162.    As a direct and proximate result of Hyundai's breach of its implied warranty of merchantability, the Georgia Plaintiff and Georgia Class Members have suffered damages.

163.    At all times that Hyundai warranted and sold the Palisades, it knew or should have known that its warranties were false, and yet Hyundai did not disclose the truth, or stop manufacturing or selling the Palisades, and instead continued to issue false warranties, and continued to insist the Palisades was free of defects. The Palisades were defective when Hyundai delivered them to its resellers, dealers, and distributors which sold the Palisades and the Palisades were therefore still defective when they reached the Georgia Plaintiff and Georgia Class Members.

164.    Hyundai's resellers, dealers, and distributors are intermediaries between Hyundai and consumers. These intermediaries sell the Palisades to consumers and are not, themselves, consumers of Palisades, and therefore have no

34

rights against Hyundai with respect to the Georgia Plaintiff and Georgia Class Members' acquisition of Palisades. Hyundai's warranties were designed to influence consumers who purchased or leased the Palisades.

165.    The Georgia Plaintiff and Georgia Class Members' acquisition of the Palisades suffices to create privity of contract between the Georgia Plaintiff and Georgia Class Members, on the one hand, and Hyundai, on the other hand; however, privity of contract need not be established nor is it required because the Georgia Plaintiff and Georgia Class Members are intended third-party beneficiaries of contracts between Hyundai and their resellers, authorized dealers, and, specifically, of Hyundai's implied warranties.

**Count VII**
**Violation of Georgia's Fair Business Practice Act**
**O.C.G.A. § 10-1-390, *et seq.***
**(On Behalf of the Georgia Class)**

166.    Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

167.    Hyundai, the Georgia Plaintiff, and Georgia Class Members are "persons" as defined by the Georgia Fair Business Practices Act ("Georgia FBPA"), O.C.G. A. § 10-1-392(a)(24).

168.    The Georgia Plaintiff and Georgia Class Members are "consumers" within the meaning of Georgia FBPA O.C.G. A. § 10-1-392(a)(6).

169.    The purchase or lease of the Palisade by the Georgia Plaintiff and Georgia Class Members constituted "consumer transactions" as defined by the Georgia FBPA O.C.G. A. § 10-1-392(a)(10).

170. Georgia FBPA declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, O.C.G.A. § 10-1-393(a), including but not limited to "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised," O.C.G.A. §§ 10-1-393(b)(5), (7), (9).

171. By failing to disclose the defective nature of the Palisade to the Georgia Plaintiff and Georgia Class Members, Hyundai violated Georgia's FBPA, because Hyundai represented that the Palisade had characteristics and benefits that they do not have, and represented that the Palisade were of a particular standard, quality, or grade, when they were of another.

172. In the course of Hyundai's business, Hyundai intentionally or negligently concealed or suppressed material facts concerning the defective nature of the Palisade, to both Plaintiff and the consuming public.

173. The Georgia Plaintiff and Georgia Class Members reasonably relied on Hyundai's material omissions and false misrepresentations in purchasing or leasing their Palisade and had no way of knowing or finding out that Hyundai's representations were false on their own.

174. Hyundai's actions set forth above occurred in the conduct of "trade" and "commerce" as defined by the Georgia FBPA O.C.G.A. § 10-1-392(a)(28).

175.    Had the Georgia Plaintiff and Georgia Class Members known of the true nature of the Palisade, they would not have purchased or leased them, or in the alternative, they would have paid significantly less for the.

176.    As a direct and proximate result of Hyundai's violation of Georgia's FBPA, the Georgia Plaintiff and Georgia Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages.

177.    Hyundai's unlawful act and practices described herein affect the public interest.

178.    Pursuant to O.C.G.A. § 10-1-399, the Georgia Plaintiff seeks, in addition to equitable relief, actual and statutory damages, attorneys' fees and expenses, treble damages, and punitive damages as permitted under the Georgia FBPA and applicable law.

179.    On March 17, 2021, the Georgia Plaintiff sent a letter complying with O.C.G. A. § 10-1-399(b).  Because Hyundai failed to remedy it unlawful conduct within the requisite time period, the Georgia Plaintiff seek all damages and relief to which the Georgia Plaintiff and Georgia Class Members are entitled to.

**Count VIII**
**Violation of Georgia Uniform Deceptive Trade Practice Act**
**O.C.G.A. § 10-1-370, *et seq.***
**(On Behalf of the Georgia Class)**

180.    Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

181.   Hyundai, the Georgia Plaintiff, and Georgia Class Members are "persons" within the meaning of Georgia's Uniform Deceptive Trade Practice Act ("Georgia UDTPA"), O.C.G.A. § 10-1-371(5).

182.   Georgia's UDTPA prohibits "deceptive trade practices" which include "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, or benefits that they do not have," "[a]dvertising goods or services with intent not to sell them as advertised," and "engaging in any other conduct which similar creates a likelihood of confusion or misunderstanding." O.C.G.A. § 10-1-372.

183.   By failing to disclose the defective nature of the Palisade to the Georgia Plaintiff and Georgia Class Members, Hyundai engaged in deceptive trade practices in violation of the Georgia UDTPA, because Hyundai represented that the Palisade had characteristics and benefits that they do not have, and represented that the Palisade were of a particular standard, quality, or grade when they were of another.

184.   Hyundai advertised the Palisade with the intent not to sell them as advertised, in violation of O.C.G.A. § 10-1-372(9).

185.   Hyundai knew or should have known before the sale or lease of the Palisade that the vehicles were defective because they had exclusive knowledge of material facts concerning the existence of the defect in the Palisade.

186.   Hyundai had an ongoing duty to consumers, the Georgia Plaintiff and Georgia Class Members, not only, to refrain from their deceptive practices under

the Georgia's UDTPA, they also had a duty to disclose all material facts concerning the Palisades because they possessed exclusive knowledge of the defect.

187.   As a direct and proximate result of Hyundai's violation of Georgia's UDPTA, the Georgia Plaintiff and Georgia Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages.

188.   Hyundai's unlawful act and practices described herein affect the public interest.

189.   The Georgia Plaintiff and Georgia Class Members seek an order enjoining Hyundai's unfair, unlawful, or deceptive practices, attorneys' fees, and any and any other just and proper relief available under O.C.G.A. § 10-1-373.

## Count IX
## Fraudulent Concealment
### (Nationwide Class)

190.   Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

191.   Hyundai intentionally misrepresented or concealed material facts of the defect in the Palisade.

192.   Plaintiffs and Class Members relied on these misrepresentations and omissions in purchasing the Palisade.

193.    These misrepresentations and omissions regarding the defect were material in that a reasonable consumer would deem the information important in the vehicle purchase or lease decision and transaction.

194.   Hyundai concealed the material information and made the affirmative representations with the intent of gaining its own financial advantage to the disadvantage of Plaintiffs and Class Members.

195.    As a direct and proximate result of Hyundai's wrongful conduct and practices, Plaintiffs and Class Members have suffered damages.

196.    Hyundai's wrongful acts alleged herein were done maliciously, oppressively and with the intent to mislead and defraud. Accordingly, Plaintiffs and Class Members are entitled to punitive damages.

## Count X
## Negligent Misrepresentation
### (Nationwide Class)

197.    Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

198.    Hyundai owed a duty to disclose the defect to Plaintiffs and Class Members because Hyundai possessed superior and exclusive knowledge regarding the defect.

199.    Hyundai breached its duty by negligently misrepresenting or omitting material facts concerning the defect in the Palisade. As a direct result of Hyundai's negligent conduct, Plaintiffs and Class Members have suffered actual damages.

200.   The defect is material because Plaintiffs and Class Members had a reasonable expectation that the Palisade would be free from the defect making the vehicle unreliable. No reasonable consumer, including Plaintiffs and Class Members expects a brand new vehicle (including the Palisade) to be defective in the manner described above.

201.   Plaintiffs and Class Members would not have purchased or leased the Palisade but for Hyundai's negligent misrepresentation or omissions of material facts regarding the nature and quality of the vehicles and existence of the defect, or would have paid significantly less for the Palisade. Plaintiffs and Class Members justifiably relied upon Hyundai's negligent omissions of material facts.

202. As a direct and proximate result of Hyundai's negligent misrepresentation or omissions or material facts regarding the presence of the defect, Plaintiffs and Class Members have suffered damages.

**Count XI**
**Unjust Enrichment**
**(Nationwide Class)**

203.   Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

204.   By collecting the monetary amount charged to Plaintiffs and Class Members for their Palisade, Hyundai received and knowingly and willing accepted a direct benefit at Plaintiffs' and Class Members' expense.

205.   Plaintiffs and Class Members reasonably believed that the Palisade would function as advertised and warranted, and did not know, nor could have known, that the Palisade contained a defect at the time of purchase or lease.

206.   It would be unjust for Hyundai to retain the proceeds and profits from the sales or lease of the defective Palisade.

207.   Hyundai's unjust conduct is the proximate cause, and a substantial factor, in causing losses and damages to Plaintiffs and Class Members.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs seek the following relief for themselves and for the proposed Class, judgment against Hyundai as follows:

a) An order certifying the asserted claims, or issues raised, as a class action, and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent Class Members;

b) A judgment in favor of Plaintiffs and the proposed Class;

c) For an order declaring that Hyundai's conduct violates the statutes and laws referenced herein;

d) Damages;

e) Restitution;

f) Disgorgement, or other just equitable relief;

g) Pre and post-judgment interest;

h) Reasonable attorneys' fees and costs, as allowed by law; and

i) Any additional relief that the Court deems reasonable and just.

Respectfully submitted,

**HELLMUTH & JOHNSON, PLLC**

Dated: April 27, 2021

By:   *s/ Anne T. Regan*
Anne T. Regan (MN #333852)
Nathan D. Prosser (MN #329745)
Brian W. Nelson (MN #0398481)
8050 West 78th Street
Edina, MN 55439
Telephone: 952-941-4005
Facsimile: 952-941-2337
aregan@hjlawfirm.com
nprosser@hjlawfirm.com
bnelson@hjlawfirm.com

**ATTORNEYS FOR PLAINTIFFS**